Eastern District of Kentucky
F I L E D
APR 13 2018
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at LONDON

Civil Action No. 17-91-HRW

LORRAINE LYNNE LAWSON,            PLAINTIFF,

v.
vi.           **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed her current application for disability insurance benefits in 2013, alleging disability due to right foot and ankle pain (Tr. 179). This application was denied initially and on reconsideration. Thereafter, upon request by Plaintiff, an administrative hearing was conducted by Administrative Law Judge Dennis Hansen (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, William Ellis, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled (Tr. 16-24). Plaintiff was 49 years old at the time she alleges she became disabled. She has a high school education (Tr. 179-180). Her past relevant work experience consists of various clerical and retail customer service jobs. (Tr. 180).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability of August 2013 (Tr.18).

The ALJ then determined, at Step 2, that Plaintiff suffers from arthritis of back and knees, bilateral carpal tunnel syndrome and post-surgery of her right ankle, which he found to be "severe" within the meaning of the Regulations (Tr. 18-20).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 20). In doing so, the ALJ specifically considered Listing 1.02 but

concluded that because she was not impeded in her ability to ambulate or perform fine and gross movements effectively, she was not presumptively disabled. (Tr. 20).

The ALJ further found that Plaintiff could not return to her past relevant work (Tr. 23) but determined that she has the residual functional capacity ("RFC") to perform light work (requiring lifting and carrying 20 pounds occasionally and 10 pounds frequently, *see* 20 C.F.R. § 404.1567(b) that involved standing and walking a total of four hours per eight-hour workday; frequently stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, and climbing ramps and stairs; occasionally climbing ladders, ropes, and scaffolds; occasionally being exposed to extreme cold, humidity, wetness, and vibration; never being exposed to unprotected heights or moving machinery; and never operating a motor vehicle (Tr. 20).

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 23-24).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner. Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment and this matter is ripe for decision.

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a

3

reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

### B. Plaintiff's Contentions on Appeal

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ improperly evaluated the opinion of her treating physician, Collin E. Ball, M.D. and (2) the vocational findings are not based upon substantial evidence. Plaintiff seeks a remand of this matter for the consideration of additional medical evidence submitted to the Appeals Council after the ALJ's decision.

### C. Analysis of Contentions on Appeal

#### I.

Plaintiff's first claim of error is that the ALJ improperly evaluated the opinion of her treating physician, Collin E. Ball, M.D.

When evaluating medical opinions, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the doctor treated the claimant, the evidence the doctor presents to support his or her opinion, whether the doctor's opinion is consistent with the record as a whole, and the doctor's specialty. 20 C.F.R. § 416.927( c).

Generally, a treating physician's opinion is entitled to more weight and an ALJ must give good reasons for discounting the opinion. 20 C.F.R. §§ 416.902, 416.927(c)(2); *See also, Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Wilson*, 378 F.3d at 544. When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

Although a physician's opinion about what a claimant can still do or the claimant's restrictions may be relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. 20 C.F.R. §§ 416.912(b)(2), 416.913(b)(6), 416.927(d)(2), 416.945(a)(3), 416.946( c).

The record shows that Plaintiff first saw Dr. Ball in early 2014. At that time, she had been seeking treatment at Premier Orthopedic and Sports Medicine in London, Kentucky for problems with her ankle. (Tr. 278). Dr. Ball examined her, reviewed her imaging tests, and

5

diagnosed "[r[ight ankle pain with failure of conservative treatment; probable loose body; distal, medial and lateral malleolus with lateral collateral ligament, partial to full tear with complaints of instability and abnormal talar tilt. Probable osteochondral defect subchondral cyst, right ankle." (Tr. 275).

In a follow up exam on February 18, 2014, Dr. Ball saw an MRI of the right ankle, and believed it was "consistent with a subchondral cyst" [a sign of arthritis] in the talar dome. (Tr. 272). He also that there "is a questionable foreign body fragment" within the ankle, which he thought was an "avulsion fragment." *Id*.

In a follow-up exam on April 1, 2014 he noted "marked tenderness overlying the anteromedial, anterolateral ankle. Range of motion testing with inversion reveals some increasing inversion with ligamentous laxity." (Tr. 270). He prescribed a cortisone injection. *Id*.

On April 29, 2014, Plaintiff again visited Dr. Ball, who noted that "She has marked antalgia [limping] to the extremity/limp with a walking cane." (Tr. 269).

On June 17, 2014, Dr. Ball and Plaintiff agreed that she would undergo "arthroscopy with synovectomy, [and] removal of medial ankle avulsion." In order to relieve the inflamed and irritated synovial membranes and/or linings of the joint (Tr. 293).

Dr. Ball performed the surgery on June 27, 2014. (Tr. 284-285). He found an "ankle joint capsule hemorrhage with associated synovium," as well "diffuse arthritic degenerative change with cartilaginous fibrillation seen." (Tr. 285). He removed the avulsion fracture fragments and repaired the torn deltoid ligament. *Id*.

Following the surgery, Plaintiff was remained in a wheelchair, with "strict nonweightbearing" restrictions until early August 2104. (Tr. 289-290). She continued to use a

6

cane throughout 2014. (Tr. 378-3790.

Plaintiff continued to see Dr. Ball into 2015. On February 12, 2015, he noted that she still used her brace and a "walking cane as needed." (Tr. 411).

On April 23, 2015, she was given cortisone injection into the ankle. Dr. Ball's plan for his patient on that day was as follows:

> She was contemplating possible ankle procedure for alleviation o
> her chronic right ankle pain/arthrosis. I previously went over the
> treatment options with her that at this time I do not feel she is a
> candidate for which would be best suited with her weight, small
> size and normal activity, which will be ankle replacement. I would
> like her to be over the age of 55 before she considers this due to the
> life span of the replacement.

(Tr. 412).

At her June 18, 2015 visit, Dr. Ball noted that Plaintiff continued to have degenerative arthritis in her right ankle with plantar fasciitis and heel spur syndrome, and was treating with topical NSAIDs (nonsteroidal anti-inflammatory drugs) and using a brace (Tr. 411-16).

In April 2014, Dr. Ball completed a questionnaire in which he opined that, due to Plaintiff's right ankle problems, she could lift and carry up to 10 pounds and occasionally lift and carry less than 10 pounds; could stand and walk less than three hours in an eight-hour workday; sit an unlimited amount of time; should not use her right leg to operate foot controls; could occasionally balance and climb; and could never stoop, kneel, crouch, crawl, or bend (Tr. 268).

The ALJ discounted Dr. Ball's opinion of dire physical limitation. The ALJ found that the opinion was conclusory, inconsistent with the record as a whole and unsupported by any narrative opinion. (Tr. 22).

The Court agrees. The "opinion" is nothing more than a check-the-box-form with no

accompanying narrative which could have provided support for Dr. Ball's extreme assessment. Further, as the ALJ noted, Dr. Ball's opinion was internally inconsistent: he opined that Plaintiff could lift and carry 10 pounds frequently, but also that Plaintiff could only lift less than 10 pounds occasionally. The ALJ suggested that perhaps Dr. Ball did not pay great attention when authoring his opinion. Plaintiff argues that the ALJ misinterpreted Dr. Ball's opinion in this respect (and that the "X" intended to exclude those portions of the opinion). Even if this reading is correct, the opinion could best be described as ambiguous which lends credence to the ALJ's decision to discount it.

Finally, the ALJ found that the severe limitations assessed by Dr. Ball were inconsistent with his own relatively conservative treatment following Plaintiff's right ankle surgery, consisting of topical NSAIDs, a brace, and steroid injections if needed.

Plaintiff takes issue with the ALJ's notation that a right ankle MRI showed only "minimal degenerative changes," arguing that the radiologist's reading of the MRI (Tr. 267) is less persuasive than Dr. Ball's reading of the same MRI the next day (Tr. 272). Again, at most, Plaintiff's argument suggests ambiguity.

In sum, the ALJ's decision makes clear that he considered the entire record and assessed a residual functional capacity that was in line with the record as a whole, including Dr. Brown's opinion, but that Dr. Ball's opinion was unsupported by any narrative explanation, internally inconsistent, and inconsistent with his own treatment notes and therefore reasonably rejected it.

To the extent that Plaintiff suggests that this evidence is open to another interpretation that favors her claim, the Court declines to reweigh the evidence in this fashion. If the Commissioner's decision denying benefits is supported by substantial evidence, as it is here, the

8

Court must affirm that decision. *Longworth v. Commissioner of Social Security*, 402 F.3d 591, 595 (6th Cir. 2005). Even if substantial evidence exists to support Plaintiff's claim, the Court should still affirm the Commissioner's decision because it is supported by substantial evidence. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (even if the Court would have decided the matter differently than the ALJ, if substantial evidence supports the ALJ's decision, it must be affirmed.)

## ii.

Plaintiff's second claim of error is that the vocational findings are not based upon substantial evidence. First, she asserts that the jobs cited by the VE are not available in Kentucky. However, testimony regarding the local job market is not required. The Sixth Circuit, has rejected such arguments, holding that the relevant inquiry is the number of jobs available in the *national* economy and that "[t]he Commissioner is not required to show that job opportunities exist within the local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999).

Plaintiff also argues that the Dictionary of Occupational Titles ("DOT") upon which the VE relied in his testimony is outdated. While this may be true, the current law in this regard permits a VE to refer to and rely upon the DOT as a source of reliable job information for determining disability claims and as suitable for administrative notice. *See* 20 C.F.R. § 404.1566(d); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(b). Under the current law, the ALJ was permitted to rely upon the VE's testimony which cited the DOT.

Finally, Plaintiff maintains that the ALJ's questioning to the vocational expert was confusing. However, a review of the transcript reveals that in posing the hypothetical question to the VE, the ALJ tracked the assessed residual functional capacity verbatim and, further, the VE

did not ask for clarification. Rather, the hypothetical posed accurately portray the RFC as formulated based upon the objective medical evidence, which is all that is required. *See Varley v. Secretary of Health and Human Services*, 820 F.2d 777 (6th Cir. 1987) As such, the Court finds that the ALJ's RFC and findings based upon the VE's testimony are supported by substantial evidence in the record.

### iii.

Finally, Plaintiff seeks a remand of this matter for the consideration of additional medical evidence submitted to the Appeals Council after the ALJ's decision. Specifically, Plaintiff argues that evidence which purports to document a diagnosis of scleroderma should be considered in determining whether she is disabled.

Sentence six of 42 U.S.C. §405(g) provides:

> The court . . . may at any time order additional evidence be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. §405(g).

Therefore, the limited circumstances under which remands are permitted arise when the party seeking remand shows that: (1) there is new, non-cumulative evidence: (2) the evidence is "material" - i.e., both relevant and probative, so that there is a reasonable possibility that it would change the administrative result; and, (3) there is good cause for failure to submit the evidence at the administrative level. *Willis v. Secretary of Health and Human Services*, 727 F.2d 551, 554 (6th. Cir. 1984). While it is not, generally, difficult for a party seeking remand to show that evidence is new, it is, generally, onerous to demonstrate that the new evidence is material.

Here, the evidence Plaintiff claims warrants a sentence six remand post-dates the ALJ's hearing decision. Therefore, this new evidence does not persuasively relate to the relevant time period before the Court in this case, is not material and remand is not warranted.

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 13th day of April, 2018.



**Signed By:**
*Henry R. Wilhoit, Jr.*
**United States District Judge**